STATE OF MINNESOTA, *ex rel.* Frank Nicolin, *vs.* BOARD OF COUNTY COMMISSIONERS OF SCOTT COUNTY.

January 8, 1890.

**Change of County-Seat—Petition—Notices.**—Chapter 174, Laws 1889, relating to the changing of county seats, considered as contemplating the giving of the prescribed notices as conditions precedent to action by the board of county commissioners upon a petition for the change of a county-seat. The board was not required to take action upon such a petition, unless it found that the law respecting notices had been complied with.

**Same—Mandamus.**—A peremptory *mandamus,* granted *ex parte* upon the petition of the relator, without previous opportunity afforded to the respondents to be heard, commanding the board of county commissioners to consider and determine the matters alleged in a petition for the removal of a county-seat, irrespective of the matter of notice, *held* erroneous.

Appeal from an order of the district court of Scott county, *Edson,* J., presiding, directing the issue of a peremptory writ of *mandamus.*

*James McHale, Henry Hinds,* and *H. J. Peck,* for appellants.

*C. D. & Thos. D. O'Brien* and *F. J. Leonard,* for respondent, (relator.)

DICKINSON, J. This is an appeal by the board of county commissioners of Scott county from an order of the district judge indorsed upon, and allowing, a peremptory writ of *mandamus.* This peremptory writ was allowed in the first instance upon the petition of the relator, without opportunity having been afforded to the respondents to be heard concerning the matters alleged in the petition. The writ commanded the board of commissioners to convene at a time stated, and to act upon a petition signed by the relator and others, for a change of the county-seat, under the provisions of chapter 174 of the Laws of 1889, relating to that subject. They were commanded to consider and determine whether the signatures to the petition were genuine, and whether the signers were legal voters of the county; whether the signatures had been affixed within the time specified in the statute; and that thereupon they should file in the office of

the county auditor a certificate of their action, certifying what number, if any, of the signers of the petition were not legal voters of the county; what number, if any, of the signatures were not genuine; and what number, if any, had not been affixed within the time prescribed by statute.

It is contended that a peremptory writ in the first instance was unauthorized. We think that this claim on the part of the appellants should be sustained. A final determination as to the duty of the county commissioners could not be thus made and enforced *ex parte*, and without any opportunity to be heard as to the existence of the facts upon which the duty rests. Among the conditions prescribed in the statute with reference to the meeting of the board of county commissioners, upon the call or order of the county auditor, after the filing of the proper petition in his office, it is enacted that the auditor shall file in his office a notice of the filing of the petition, and of the meeting of the board of county commissioners to take action thereon. He is also required to cause such notice to be published in the county newspapers, and to be posted in each organized town in the county. *Prima facie* proof may be made by affidavit of compliance with these requirements of the statute. It is further provided that public notice of the intention to circulate a petition for the change of the county-seat shall be given by publication and by posting, for a specified period prior to the circulation of the petition for signatures; and *prima facie* proof of this having been done may be made by affidavit. The law contemplates a hearing before the board, at the time of their meeting, concerning the matters to be determined by it, and makes provision for the receiving of evidence, and allows the legal voters of the county to appear and be heard. Hence, although it is declared in section 9 of the act that no failure or refusal of the publisher of any newspaper to publish the prescribed notices shall affect the sufficiency of the notice, or invalidate the proceedings, it is apparent that the statute contemplates, as conditions precedent to the action of the county board upon the petition, that the prescribed notices shall be posted, and shall also be published in the newspapers unless that is prevented by the neglect or refusal of the publishers. It was for the board to ascertain, by proper proofs, that the law in

respect to the notices had been complied with before it became its duty to proceed to a hearing and determination upon the matters presented in the petition. The action of the court was erroneous in determining, *ex parte*, upon the petition of the relator, that no valid and sufficient reason could be assigned by the board of county commissioners for their conduct. The peremptory writ was in effect a final determination of an issuable matter, without a hearing of the parties.

The order allowing the writ is reversed, and the writ quashed. The appeal from the prior order, dated June 7, 1889, was, as the appellant concedes, premature, and it is dismissed.